IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

EDWARD ANDREW BREEZE, )
)
    Plaintiff, )
)
) CIV-13-1259-D
v. )
)
CAROLYN W. COLVIN, )
  Acting Commissioner of Social )
  Security Administration, )
)
    Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Administrative History

Plaintiff applied for disability benefits on March 29, 2010. In his application, Plaintiff alleged that he became disabled on March 5, 2010, due to back surgery to remove a tumor, Reiter's syndrome, costochondritis, impairment in both shoulders, and left foot numbness. (TR 151). He has a high school education and previously worked as an electrician. (TR 152-

153). Plaintiff later alleged that his disabling impairments included a new impairment of fibromyalgia diagnosed in February 2011. (TR 196).

At Plaintiff's request, an administrative hearing was conducted on June 6, 2012, before Administrative Law Judge McLean ("ALJ"). (TR 24-55). At this hearing, Plaintiff appeared without counsel or a representative. The ALJ advised Plaintiff of his right to be represented at the hearing, and, after being fully advised, Plaintiff stated he wished to proceed without a representative. (TR 27-28). Plaintiff and a vocational expert ("VE") testified at the hearing. Plaintiff subsequently obtained counsel in July 2012. (TR 113).

The ALJ issued a decision on September 4, 2012. (TR 12-22). Following the agency's well-established, five-step sequential evaluation procedure, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 5, 2010. (TR 14). At step two, the ALJ found that Plaintiff had severe impairments of degenerative disc disease of the back with radicular symptoms to the left leg, myalgias, and obesity. (TR 14). At the third step, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairments. In making this finding, the ALJ considered the requirements of the listing for musculoskeletal impairments and Social Security Ruling ("SSR") 02-1p concerning the evaluation of an obesity impairment.

At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work allowing him to sit for 6 hours, stand for 2 hours, with no ladder, rope, or scaffold climbing, no balancing or crouching, only occasional stair or ramp climbing, only occasional kneeling, crawling, or stooping, and with no overhead reaching with both

upper extremities, no work around unprotected heights or hazardous unprotected machinery, and no commercial driving. (TR 15). The ALJ found that this RFC for work precluded the performance of Plaintiff's past relevant work as an electrician.

At the fifth and final step, the ALJ found that there were jobs existing in the national economy that Plaintiff could perform. Relying on the VE's testimony concerning the availability of jobs for an individual with Plaintiff's RFC for work, the ALJ identified the jobs of telephone quotation clerk, food and beverage order clerk, and new account interviewer as jobs falling within Plaintiff's RFC for work and available in sufficient numbers in the economy. Based on these findings, the ALJ concluded Plaintiff was not disabled within the meaning of the Social Security Act.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination

of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Step Two - Fibromyalgia

Plaintiff asserts that the ALJ failed to properly develop the record with respect to Plaintiff's alleged impairment due to fibromyalgia. Plaintiff bases this argument on Plaintiff's appearance at the hearing without a representative, noting that the ALJ has a heightened duty to develop the record when a claimant is unrepresented. See Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987). As an aside, Plaintiff asserts that the ALJ included an "erroneous implication" in the decision that Plaintiff was represented by counsel at the hearing. The ALJ's decision correctly notes that at the time of the decision Plaintiff was represented by counsel. The record shows that Plaintiff retained counsel within a month after the hearing and that counsel entered an appearance in the administrative proceeding in July 2012. No "erroneous implication" that Plaintiff was represented at the hearing is suggested in the ALJ's decision.

Plaintiff does not suggest that additional medical evidence existed that should have been considered by the ALJ. Rather, Plaintiff suggests that the ALJ could have recontacted Plaintiff's treating doctor, Dr. Shultz, to "request additional existing records, or purchase a consultative exam." Plaintiff's Opening Brief, at 7.

The record reflects that Plaintiff sought treatment from Dr. Shultz, a rheumatologist,

4

in November 2010. (TR 307). Plaintiff described "achy, dull, deep sharp, stabbing" and "mild, moderate," "constant" pain in his shoulders, hands, back, knees, and joints, and a history of treatment for Reiter's syndrome. (TR 307). He was taking Tramadol® for pain and rarely took his prescribed narcotic pain medication, Lortab®. He was also on medication, which he described as helpful, for migraines. Dr. Shultz noted a physical examination of Plaintiff was "completely normal, and his complaints of joint pain seem out of proportion to his clinical findings today." (TR 311). He was prescribed Prednisone® and Plaquenil®, and Dr. Shultz noted she was questioning "whether [Plaintiff] may have a component of fibromyalgia." (TR 311).

In February 2011, Plaintiff returned to Dr. Shultz, for follow-up treatment. Dr. Shultz noted that Plaintiff had a "[q]uestionable history of Reiter's syndrome diagnosed by Dr. Blaschke." (TR 305). Dr. Shultz noted Plaintiff's medication history and that she was continuing two medications, Prednisone® and Plaquenil® "for now." (TR 305). Dr. Shultz noted Plaintiff also had a history of degenerative disc disease of the lumbar spine and that he had undergone surgery the previous year for a disc protrusion and left-sided radicular symptoms. Plaintiff reported, as Dr. Shultz noted, that his low back "bothers him from time to time" and he was advised to continue his Tramadol® and Lortab® medications "as needed for pain, and Flexeril as needed for muscle spasms." (TR 305).

Dr. Shultz then noted a tentative diagnosis of "[p]robable fibromyalgia" based on Plaintiff's symptoms of "flu-like flare ups of diffuse pain, insomnia, fatigue, migraines, alternative bouts of diarrhea and constipation, [restless leg syndrome], and hypersensitivity

5

to touch." (TR 305). Dr. Shultz noted that fibromyalgia "is likely causing the majority of his symptoms, as the pain he describes is out of proportion to his physical examination and lab findings." (TR 305). He was prescribed Lyrica®, which Plaintiff stated had previously helped his pain. (TR 305). Dr. Shultz noted that a physical examination showed generally normal findings, including "[g]ood range of motion over the wrists, elbows, shoulders, and hips," intact muscle strength in the upper and lower extremities, and intact gait. (TR 304). Dr. Shultz noted Plaintiff "denied any pinpoint areas of tenderness to palpation across his lower lumber spine." (TR 304). Finally, Dr. Shultz noted Plaintiff was advised to return for follow-up treatment in three months.

In May 2011, Dr. Shultz noted that Plaintiff exhibited "no overt evidence of synovitis in any of the joints today. Mild tenderness to palpation over the hand joints [but h]e is able to make full fists bilaterally. Good range of motion over the wrists, elbows, shoulders, and hips." (TR 298). Plaintiff again exhibited intact muscle strength in his upper and lower extremities, and he again denied "pinpoint areas of tenderness to palpation across his lower lumbar spine." (TR 299). Plaintiff did exhibit tenderness to palpation over his sternum and anterior chest wall. The diagnostic impression was degenerative disc disease of the lumbar spine, "myalgias/myosit/fibrmyos [sic]," and "raised antibody." (TR 300). In accompanying notes, Dr. Shultz again noted only a provisional diagnosis of "[p]robable fibromyalgia" based on the same symptoms previously noted and Plaintiff's report that the Lyrica® was helping his pain and he was sleeping "fair." (TR 300). He was advised to continue this medication and return for follow-up treatment in three months.

6

There are no further notes of treatment of Plaintiff by Dr. Shultz, however. Consistent with Dr. Shultz's diagnostic impressions, the ALJ found that Plaintiff had degenerative disc disease and myalgias.

Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p ("Evaluation of Fibromyalgia), 2012 WL 3104869 (effective July 25, 2012). Employing the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia, a finding of a medically determinable impairment of fibromyalgia requires "all three of the following," including (1) a "history of widespread pain - that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back) - that has persisted . . . for at least 3 months" and (2) "[a]t least 11 positive tender points on physical examination . . . found bilaterally (on the left and right sides of the body) and both above and below the waist" and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded." Id. at * 2, 3. Employing the 2010 American College of Rheumatology Preliminary Diagnostic Criteria, a finding of a medically determinable impairment of fibromyalgia requires "all three of the following criteria," including (1) "[a] history of widespread pain," (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems . . . , waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome," and (3) "[e]vidence that other disorders that could cause these repeated

7

manifestations of symptoms, signs, or co-occurring conditions were excluded." Id. at *3.

In this case, Dr. Shultz's office notes do not contain the requisite findings under either of the recognized diagnostic criteria described above. Indeed, Plaintiff reported to Dr. Shultz in May 2011 that he was experiencing only occasional, "off and on" memory problems. (TR 296). Moreover, Dr. Shultz did not include a definitive diagnosis of fibromyalgia in her office notes. Thus, the ALJ did not err by failing to find Plaintiff had a severe impairment due to fibromyalgia.

"The ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." Henrie v. United States Dep't of Health and Human Servs., 13 F.3d 359, 360-361 (10th Cir. 1993). It is not the ALJ's duty, however, to be the claimant's advocate," and "the ultimate burden of proving that [the claimant] is disabled under the regulations" is borne by the claimant. Id. at 361. "Ordinarily, the claimant must in some fashion raise the issue sought to be developed which, on its face, must be substantial. Specifically, the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007)(quotation omitted).

The ALJ's decision reflects consideration of the relevant medical evidence in the record, including Dr. Shultz's notes indicating that fibromyalgia was a possible diagnosis given Plaintiff's symptoms and allegation of pain that was not consistent with his examination and laboratory findings. Moreover, Plaintiff retained counsel soon after the

hearing and well before the ALJ entered her decision. Nothing in the record indicates that Plaintiff or his counsel believed other pertinent medical evidence existed that should have or could have been submitted for the ALJ's consideration prior to the entry of the decision. No error occurred in the ALJ's evaluation of the evidence.

IV. Step Three - Degenerative Disc Disease

Plaintiff next faults the ALJ for not stating in the decision that the ALJ had considered the requirements of Listing 1.04A for Disorders of the Spine in connection with the step three determination. The ALJ's step three findings, however, clearly track the requirements of Listing 1.04A. As the ALJ's decision reflects consideration of the requirements of Listing 1.04A and the finding that Plaintiff's musculoskeletal impairment did not satisfy the requirements of the listing, the ALJ did not err in failing to expressly state that she had considered the requirements of Listing 1.04.

Plaintiff also contends that the ALJ's step three decision is not supported by substantial evidence in the record as Plaintiff's back impairment is severe enough to meet or equal the listing. It was Plaintiff's "step three burden to present evidence establishing [his] impairments meet or equal listed impairments." Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). To satisfy this burden, Plaintiff must establish that his impairments "meet all of the specified medical criteria. An impairment that manifests only some . . . criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Plaintiff points to the findings on MRI scans of Plaintiff's lumbar spine, but those findings are not relevant to the step three decision challenged by Plaintiff. The ALJ found

9

at step two that Plaintiff had a severe impairment of degenerative disc disease in his back, and this finding takes into account the MRI scan findings.

Plaintiff points to one notation in a treatment record in September 2009 in which Plaintiff complained of "weakness." (TR 224). This is not an objective finding, and Plaintiff's reference to this subjective complaint does not support his argument. Plaintiff points to another notation in a treatment record in August 2009 in which Plaintiff complained of "numbness." (TR 236). Again, this is not an objective finding, and Plaintiff's reference to this subjective complaint does not support his argument. Plaintiff's remaining argument is limited to a list of diagnostic impressions and subjective complaints that are similarly bereft of objective medical findings. Many of these page references note subjective complaints which preceded Plaintiff's back surgery.

As the ALJ reasoned in the decision, Plaintiff reported a wide and varied range of daily activities (TR 36-40, 45-47, 162-169), and Dr. Shultz reported Plaintiff's physical examination findings in November 2010, February 2011, and May 2011 were largely normal. The ALJ reasoned that the "MRI findings showing stenosis in May 2012 were considered" in the RFC finding for a limited range of sedentary work. (TR 19). Plaintiff reported to Dr. Shultz in February 2011 and again in May 2011 that his low back bothers him only occasionally. (TR 300, 305). Plaintiff reported to Dr. Shultz in November 2010 that he only "rarely" took his prescribed narcotic pain medication and that the prescribed narcotic and non-narcotic pain medications helped his pain. (TR 308). There is substantial evidence in the record to support the ALJ's finding that Plaintiff's back impairment did not meet or equal

the requirements of the listing.

V. Step Five

Plaintiff contends that the ALJ's step five finding is faulty because Plaintiff presented evidence of a mental impairment that was inconsistent with the reasoning requirements of the jobs identified by the ALJ. Plaintiff did not allege that he had a mental impairment. Nor is there evidence in the record that would imply the existence of a medically-determinable mental impairment. In support of his contention, Plaintiff presents only a list of notations in a few medical records indicating Plaintiff complained of various mental difficulties. Plaintiff does not plausibly relate these isolated symptoms to the low "reasoning level" requirements for the unskilled jobs identified by the VE and relied upon the ALJ to support the step five decision. No error occurred in this regard.

The VE testified that there was no conflict between her testimony and the information contained in the Dictionary of Occupational Titles ("DOT"). (TR 53). See Poppa v. Astrue, 569 F.3d 1167, 1173-74 (10th Cir. 2009)(ALJ must inquire about and resolve any conflicts between the VE's testimony and DOT's job descriptions); SSR 00-4p, 2000 WL 1898704, *2 (2000)(ALJ must elicit reasonable explanation for any conflict between DOT and VE's testimony before relying on VE's evidence to support disability determination).

The VE pointed out that the DOT does not address positional changes and that its classification for reaching requirements does not specify directions. (TR 53). However, the VE stated that she based her testimony regarding the overhead reaching requirements of the identified jobs on her "experience regarding these jobs and reaching and/or positional

changes." (TR 53). Plaintiff's argument that "[n]either the ALJ or the VE discussed or addressed how the Plaintiff's inability to physically use his arms above head level impacted his ability to perform these jobs or conflicts with these DOT definitions" (Plaintiff's Opening Brief, at 13) is simply contrary to the record.

Plaintiff points out that the three jobs identified by the VE required a "handling" level of seven, but Plaintiff does not indicate how this handling requirement conflicts with the VE's testimony. The ALJ did not err in relying on the VE's testimony or in failing to expressly resolve a conflict between the VE's testimony and the DOT. The VE testified that her testimony regarding the overhead reaching requirements of the identified jobs was based on her experience and that no conflict existed between her testimony and the DOT because the DOT did not classify jobs in terms of the specific direction of postural requirements. As there is substantial evidence in the record to support the Commissioner's final decision, the decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before             November 10th, 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421,

1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____20th____ day of ____October____, 2014.

*/s/ Gary M. Purcell*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE